**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

Plaintiff,

v. No. CR 05-924 RB

LARRY LUJAN,
KACEY LAMUNYON,
and EUGENIO MEDINA,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on a Motion for Severance from Co-Defendants (Doc. 169), filed by Defendant Kacey Lamunyon on September 7, 2007, and on a Motion for Severance (Doc. 172), filed by Defendant Eugenio Medina on September 10, 2007. The United States filed responses to the motions, Mr. Lamunyon and Mr. Medina have each filed replies to the responses, and I heard evidence relating to, and argument on, both motions at a hearing conducted on December 5, 2007. Having considered the motions, briefs, arguments, statements and redactions submitted under Federal Rule of Criminal Procedure 14(b), and the relevant authority, I find that the motions should be granted in part and denied in part. I will grant Mr. Lamunyon's and Mr. Medina's requests to sever their trials from Defendant Larry Lujan's trial, but will deny their requests to sever their trials from one another. I will therefore hold one capital trial of Mr. Lujan and a separate non-capital trial of Mr. Lamunyon and Mr. Medina.

**I. BACKGROUND**

On July 10, 2007, the grand jury returned the Third Superseding Indictment (Doc. 144) in this case, charging Defendants Larry Lujan, Kacey Lamunyon and Eugenio Medina with (1)

"Kidnapping Resulting in Death," in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2, and (2) "Tampering with a Witness Resulting in Death," in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2. The charges in the Third Superseding Indictment stem from the alleged kidnaping and killing of Dana Joe Grauke II. The Third Superseding Indictment also includes a Notice of Special Findings against Mr. Lujan. On July 12, 2007, the United States filed a Notice of Intent to Seek a Sentence of Death (Doc. 146) against Mr. Lujan.

Mr. Lamunyon and Mr. Medina each subsequently filed motions to sever, requesting separate trials from each other as well as from Mr. Lujan. They both provide three main justifications for severance. First, they assert that severance is required under *Bruton v. United States*, 391 U.S. 123 (1968), because they each gave recorded statements inculpating each other and Mr. Lujan on the charged crimes. They contend that redaction will not cure the *Bruton* problems because there are too many references to each other and to Mr. Lujan in the statements. Moreover, they assert that redaction will not be possible because redactions that distort the meaning of a statement are not permitted. Second, they argue that the Court should sever their trial from Mr. Lujan's because of the prejudice from being tried by a death-qualified jury, which they argue is more prone to convict. Finally, they contend they will be prejudiced by the admission into evidence of the double-murder allegedly committed by Mr. Lujan.

On September 24, 2007, the United States filed a Response to Defendant Lamunyon's Motion to Sever (Doc. 192), as well as a Response to Defendant Medina's Motion for Severance (Doc. 193). These responses are virtually identical. The United States contends that any co-defendant statements that refer to either Mr. Lamunyon or Mr. Medina can be redacted to eliminate any reference to them or to their existence to avoid any *Bruton* issues. The Government further asserts that the Supreme Court has concluded that a joint trial of a capital and non-capital defendant

is constitutional, has squarely rejected the argument that a death-qualified jury lacks impartiality, and has repeatedly found no reason to depart from the assumption that jurors follow their instructions. As for the spillover prejudice argument, the United States argues that this issue is premature because the Court has not ruled on or even been presented with the United States' forthcoming Rule 404(b) motion.[1] Even if the Court were to grant any such motion, the United States argues that a limiting instruction would prevent prejudice to the co-defendants.

Because both severance motions raised *Bruton* issues, on November 6, 2007, the Honorable J. Thomas Marten, at my request, ordered the United States under Federal Rule of Criminal Rule 14(b) to provide me, for *in camera* inspection, any defendant's statement that the Government intends to use as evidence at trial and the proposed redactions to any such statements. *See* Order (Doc. 213). The United States timely submitted the statements.[2] The United States submitted statements of Mr. Lamunyon taken on three separate occasions. Mr. Lamunyon's March 29, 2005 statement consists of approximately 48 total pages; his May 29, 2005 statement consists of 42 total pages; and his July 6, 2005 statement is 60 pages. Similarly, the United States submitted statements of Mr. Medina taken on the three following dates: April 5, 2005; May 30, 2005; and July 6, 2005. Mr. Medina's statements are approximately 31 pages, 31 pages, and 53 pages, respectively. Although the United States also submitted statements of Mr. Lujan, during the December 5, 2007 hearing, the Government stated that it would not seek to introduce during its case-in-chief at trial

---

[1]Federal Rule of Evidence 404(b) requires the prosecution in a criminal case to provide reasonable notice in advance of trial of the general nature of any evidence of other crimes, wrongs, or acts it intends to introduce at trial. *See* Fed. R. Evid. 404(b).

[2]Although the United States submitted the statements and the redacted statements to me *in camera*, the parties have represented that the unredacted statements have already been provided to the defense in discovery.

any statements made by Mr. Lujan to law enforcement within the meaning of Federal Rule of Criminal Procedure 16(a)(1)(A).

## II. STANDARD

Federal Rule of Criminal Procedure 8(b) provides that two or more defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "Joint trials of defendants who are indicted together are preferred because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hall*, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).

A court, however, may order separate trials if the joinder of defendants appears to prejudice a defendant. *See* Fed. R. Crim. P. 14(a). The decision whether to grant severance lies within the discretion of the trial court. *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). In exercising its discretion, a court "must weigh prejudice to the defendant caused by joinder against the 'obviously important considerations of economy and expedition in judicial administration.'" *Id.* (quoting *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir. 1979)). "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Rather, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The defendant bears a heavy burden of showing real prejudice in his case sufficient to warrant severance. *Hall*, 473 F.3d at 1302; *Dirden*, 38 F.3d at 1140-41 (noting that movant must

show "more than a better chance of acquittal or a hypothesis of prejudice, he must, in fact, show real prejudice") (quoting *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993)). Moreover, limiting instructions often will cure any risk of prejudice. *Zafiro*, 506 U.S. at 539. The court should consider other remedial measures that will minimize the risk of prejudice. *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989).

## III. ANALYSIS

Mr. Lamunyon and Mr. Medina argue that their trials should be severed from that of Mr. Lujan as well as from one another. I will first examine whether their trials should be severed from that of Mr. Lujan's trial before turning to whether they should each have a separate trial from one another.

### A. Severance of Capital Defendant

#### 1. Judicial Economy

Judicial economy is one of the main justifications behind the preference for joint trials. *See Zafiro*, 506 U.S. at 537. Although a joint trial in this case may be more efficient, the Court's calendar and docket can be cleared to accommodate in a timely fashion two trials in this case. I acknowledge that requiring victims and witnesses to repeat the inconvenience and potential trauma of testifying in two separate trials weighs in favor of denying severance. Nevertheless, I do not believe that these judicial economy considerations outweigh the concerns regarding the likelihood of prejudice in a joint trial in the extraordinary context of this case. *See United States v. Basciano*, 2007 WL 3124622, *3-4 (E.D.N.Y. Oct. 23, 2007) (unpublished opinion) (granting motion to sever after finding that likelihood of substantial prejudice to defendants outweighed judicial economy considerations).

Moreover, the Court specifically inquired of the United States at the December 5, 2007 hearing whether there were any other factors other than judicial economy that justified conducting a joint trial in this case. The United States did not argue that any other issues weighed in favor of a joint trial. Although witness security issues were raised in the context of the discovery motions pending in the case, the United States has not yet established that such issues outweigh the potential prejudice to the defendants in conducting a joint trial.

**2. *Bruton***

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the admission of testimonial statements of a witness who did not appear at trial violates the Confrontation Clause, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *See id.* at 68. A statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime. *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005).

A defendant's Confrontation Clause rights are violated when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant. *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987) (citing *Bruton v. United States*, 391 U.S. 123 (1968)). Where, however, a confession is not facially incriminating and becomes so only when linked with evidence later introduced at trial, there does not exist the overwhelming probability that jurors will be unable

to obey an instruction that they disregard an incriminating inference. *See Richardson,* 481 U.S. at 208.

*Bruton* problems alone do not require severance. *Spears v. Mullin*, 343 F.3d 1215, 1235 (10th Cir. 2003). "*Bruton* only requires that in a joint trial a defendant must be given an opportunity to cross-examine his codefendant when the government introduces a codefendant's confession that incriminates the defendant." *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990). "Of course, if the district court grants a motion to sever, *Bruton* problems will never arise." *Id.* Where a *Bruton* situation exists, the court may protect the defendant's Sixth Amendment rights by (1) excluding the confession, (2) severing the trial, or (3) redacting the confession to avoid mention or obvious implication of the non-confessing defendant coupled with the use of limiting instructions. *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001). Severance or exclusion, however, may be required where the admission of the redacted statement distorts the meaning of the statement or excludes information substantially exculpatory of the declarant. *See United States v. Comeaux,* 955 F.2d 586, 590 (8th Cir. 1992). It is thus up to the court to decide whether the risk of prejudice arising from *Bruton* issues is high enough to warrant severance. *See Zafiro*, 506 U.S. at 539 (expressly cautioning that risk of prejudice warranting severance could occur where *Bruton* issues arise).

A non-testifying co-defendant's confession is properly redacted if it eliminates any reference to the defendant's name and to his existence, and thus, may be admitted so long as the court also gives a proper limiting instruction. *Richardson*, 481 U.S. at 211. The admission of such a statement is constitutional even when other evidence otherwise links the co-defendant to the statement. *See id.* at 208-11. Moreover, a properly redacted confession of a non-testifying co-defendant does not raise a *Crawford* problem because the co-defendant's statement was not offered against the defendant, but only against the co-defendant. *See id.* at 206 (explaining that witness whose

testimony is introduced at joint trial is not considered to be witness "against" defendant if jury is instructed to consider testimony only against co-defendant); *United States v. Harris*, 167 Fed. Appx. 856, 859 (2d Cir. 2006) (unpublished opinion) (noting that properly redacted statement did not raise *Crawford* problem because jury was instructed that non-testifying co-defendant's statement was not offered against defendant, but only against co-defendant).

*Richardson*, however, left open the question of whether a redacted statement where a co-defendant's name is replaced with a neutral pronoun, such as "person" or "individual," may be admitted under *Bruton*. *See Richardson*, 481 U.S. at 211 n.5 ("We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun."). The Supreme Court answered one aspect of this issue in *Gray v. Maryland*, 523 U.S. 185 (1998), when it concluded that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result." *Id.* at 192. The Supreme Court in *Gray* noted that *Richardson* depends in significant part upon the kind of, not the simple fact of, inference. *Id.* at 196. The Supreme Court distinguished *Richardson*, noting that the redacted confession with the blank prominent on its face involve statements that "obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.* The Supreme Court explained that redactions using a blank space or the word "delete" can normally be further redacted. *See id.* By way of example, the Court noted that the redaction of "Me, deleted, deleted, and a few other guys" could be further redacted as "Me and a few other guys." *See id.* The Supreme Court indicated its approval of this latter kind of redaction. *See id.* at 196-97.

Since *Gray*, the Tenth Circuit has held that, "where a defendant's name is replaced with a neutral pronoun or phrase there is no *Bruton* violation, provid[ed] that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury." *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999). If, however, it is obvious from consideration of the confession as a whole that the redacted term refers to the defendant, then the Confrontation Clause problem remains. *See id.*

Many other circuits, like the Tenth Circuit, have permitted admission of a redacted statement using a neutral pronoun, even if other evidence would link the co-defendant to the redacted confession, so long as the redacted statement is not facially incriminatory with respect to the non-testifying co-defendant. *See, e.g.*, *United States v. Vega Molina*, 407 F.3d 511, 519-21 (1st Cir. 2005) (holding that non-testifying co-defendant's redacted confession, describing crimes in detail, acknowledging his participation in them, but using terms such as "other individuals" or "another person" when mentioning his co-defendants, was not so powerfully incriminating to bring *Bruton* proscription to bear); *United States v. Logan*, 210 F.3d 820, 822 (8th Cir. 2000) (determining there was no Sixth Amendment violation where officer testified that co-defendant said that he and "another individual" had planned and committed robbery); *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999) (affirming denial of motion to sever because retyped versions of confessions replaced defendants' respective names with phrases "another person" or "another individual"); *United States v. Vejar-Urias*, 165 F.3d 337, 339 (5th Cir. 1999) ("[T]his court has found on several occasions that admitting redacted confessions in which a pronoun was substituted for the defendant's name did not violate *Bruton*.); *United States v. Hoac*, 990 F.2d 1099, 1106-07 (9th Cir. 1993) (holding there was no *Bruton* error in admitting redacted confession in which "individuals" substituted for defendant's name where jury was aware that several people were involved in

conspiracy, including one who was not tried jointly); *United States v. Williams*, 936 F.2d 698, 699 (2d Cir. 1991) (determining that co-defendant's confession may be admitted with limiting instruction where redaction replaces reference to defendant with neutral pronoun); *United States v. Briscoe*, 896 F.2d 1476, 1502 (7th Cir. 1990) (holding that co-defendant's statement that "we" concealed packages did not violate defendant's confrontation rights because "we" did not directly implicate defendant in knowing possession of heroin).

Many courts, however, have also recognized that there are circumstances where no redaction or neutral pronoun substitution will suffice to eliminate a Sixth Amendment violation. *See Stanford v. Parker*, 266 F.3d 442, 456-57 (6th Cir. 2001) (concluding that Confrontation Clause was violated because "other person" in confession would not prevent jury from inferring confession referred to defendant); *United States v. Hoover*, 246 F.3d 1054, 1059 (7th Cir. 2001) (holding that "incarcerated leader" clearly referred to defendant in violation of *Bruton* because it was no more than obvious pseudonym and that to "adopt a four-corners rule would be to undo *Bruton* in practical effect"); *United States v. Richards*, 241 F.3d 335, 341 (3d Cir. 2001) (determining that Confrontation Clause was violated by admission of co-defendant's confession that referred to "friend" and "inside man"); *United States v. Gonzalez*, 183 F.3d 1315, 1321-22 (11th Cir. 1999) (concluding that there was a Confrontation Clause violation because prosecutor's presentation of redacted confession implicated precise number (four) of confessor's co-defendants), *overruled on other grounds*, *United States v. Diaz*, 248 F.3d 1065 (11th Cir. 2001); *United States v. Payne*, 923 F.2d 595, 597 (8th Cir. 1991) (holding that confession indicating plan to help "someone" escape from prison violated Confrontation Clause because everyone at trial knew that "someone" meant defendant).

A court's task is therefore to determine, on a case-by-case basis, whether the redacted statements are the sort of powerfully, facially, or directly incriminating statements that *Bruton* and

its progeny concluded a jury could not put out of mind, even when given proper limiting instructions. *See United States v. Lage*, 183 F.3d 374, 386 (5th Cir. 1999). I have carefully considered all the statements provided by the United States for *in camera* inspection and conclude that the statements that the United States intends to use as evidence at trial, even when redacted, more closely resemble those in *Gray* than in *Richardson*, and thus, that the *Bruton* concerns in this case substantially weigh in favor of severing Mr. Lujan's trial from the trial of his co-defendants.

The United States asserted at the December 5, 2007 hearing that it did not intend to introduce during its case-in-chief at trial any statements made by Mr. Lujan to law enforcement officers. I therefore do not need to consider Mr. Lujan's statements for purposes of *Bruton*. The Government, however, intends to present numerous statements of Mr. Lamunyon and Mr. Medina, the bulk of which are highly inculpatory to Mr. Lujan and each other. Mr. Lamunyon and Mr. Medina both gave three different statements to law enforcement. In total, Mr. Lamunyon gave approximately 150 pages worth of statements. Similarly, in total, the United States seeks to introduce approximately 115 pages of statements of Mr. Medina. The sheer magnitude of the number of statements distinguish this case from that of *Richardson*.

Another factor that sets this case apart from *Richardson* is that redaction of the statements would not be an easy task. Both Mr. Medina's and Mr. Lamunyon's statements contain numerous references to Mr. Lujan. The statements also contain many, although far fewer, references to each other. The large number of references in the statements to co-defendants makes redaction difficult, in part because of the need for consistency among all the redactions. Also complicating redaction is the fact that restyling the statements in a way to avoid *Bruton* issues may distort the meaning of certain statements and eliminate material that is exculpatory to at least one co-defendant. For example, redacting a statement made by Mr. Medina that Mr. Lujan left alone with the victim before

the victim's death, by replacing Mr. Lujan's name with a pronoun, may resolve the *Bruton* issue as to Mr. Lujan; however, the redaction may create additional issues as to Mr. Lamunyon, who likely would want it clear that he was not the unnamed individual who left with the victim. This example illustrates that redactions that eliminate distinctions between what each defendant's role was in the crime may result in eliminating a statement that, while inculpatory as to one co-defendant, may be exculpatory as to another. These difficulties arise in this case due to the large number of references to co-defendants and the extensive details provided in the statements.

Furthermore, after reviewing all the statements, I have determined that replacing co-defendant names with pronouns or other innominate nouns will not suffice to cure the *Bruton* problems because the fact of redaction will be relatively obvious from the "four corners" of the statements themselves. For example, Mr. Medina's statements discuss extensively what Mr. Lujan and Mr. Lamunyon did during the course of the kidnaping and murder of Mr. Grauke. Replacing their names with pronouns or innominate nouns would cause confusion as to who did what. The large number of necessary redactions/replacements would make it so confusing as to which unnamed "person," "individual," or "guy" did what that it becomes obvious that the names must have been redacted. It simply defies reason that the interrogating officers would not have asked for clarification for who each "person" was, especially given the amount of other details they procured during the course of the interrogation. A juror could thus relatively easily infer that ambiguities in the roles of the persons involved must mean that the officers knew the names of each person, and consequently, that the names were redacted for purposes of trial.

I, therefore, find that it would likely be obvious from consideration of each of the redacted confessions as a whole that the redactions refer to the co-defendants, in violation of the Confrontation Clause. *See United States v. Nash*, 482 F.3d 1209, 1218 (10th Cir. 2007) (concluding

that incriminating statements of non-testifying co-defendant violated defendant's confrontation rights, even though the defendant's name was not mentioned, because it was obvious that substituted terms referred to defendant and admitted of "no other possible inference"); *Verduzco-Martinez*, 186 F.3d at 1214 (noting that if it is obvious from consideration of confession as whole that redacted term refers to defendant, then Confrontation Clause problem remains); *Gonzalez*, 183 F.3d at 1321-22 (holding that Confrontation Clause violated where redacted confession implicated precise number (four) of confessor's co-defendants). Because redaction of the statements, even with a limiting instruction, will likely not cure the Confrontation Clause problems, I conclude that the need to protect Mr. Lujan's Sixth Amendment right to confrontation weighs in favor of severing his trial from that of Mr. Lamunyon and Mr. Medina.

**3. Spillover Prejudice**

Evidence admissible against a co-defendant that would not be admissible against the defendant if he were tried alone may create a serious risk of prejudice sufficient to require severance. *Zafiro*, 506 U.S. at 539. "For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* Prejudice is not shown, however, when the evidence would be admissible at separate trials. *See United States v. Windom*, 19 F.3d 1190, 1198 (7th Cir. 1990); *Lane*, 883 F.2d at 1498 ("If all the evidence in a joint trial of defendants was admitted against each codefendant, no such prejudice could result from the joint trial because the evidence would be precisely as it would at each defendant's separate trial."). "Spillover effect" from evidence that is more damaging against a co-defendant than that against the defendant is not sufficient to warrant severance. *See United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989). To warrant severance, the prejudice must be of a type against which the court is unable to afford protection. *See United States v. Causey*, 185 F.3d 407, 416-17 (5th Cir.

1999). The defendant must show that the spillover prejudice will prevent the jury from individualizing each defendant. *See United States v. Watchmaker*, 761 F.2d 1459, 1476 (11th Cir. 1985).

Mr. Lamunyon and Mr. Medina both contend that evidence that Mr. Lujan committed two other brutal murders in the Las Cruces area will prejudice them if admitted in a joint trial. I agree that the introduction of the double murder allegedly committed by Mr. Lujan increases the likelihood of prejudice against Mr. Lamunyon and Mr. Medina, because such evidence would not be admissible against them in a separate trial. The possibility exists that a jury might infer Mr. Medina's and Mr. Lamunyon's guilt because of the enhanced likelihood of Mr. Lujan's guilt. *Cf. Basciano*, 2007 WL 3124622 at *5-6 (finding severance warranted because introduction of co-defendant's prior conviction for same charge that defendants were facing likely would spillover to defendants). Although the United States has not yet filed its Rule 404(b) notice seeking the introduction of evidence of the double murder, it has stated in its briefs and in open court that it intends to file the notice and wishes to introduce the evidence. The additional potential prejudice this evidence poses is another factor weighing in favor of severance.

**4. Death Qualification**

A death-qualified jury is one from which prospective jurors have been excluded for cause based on their inability to set aside their views about the death penalty that would prevent or substantially impair the performance of their duties in accordance with their instructions and oath. *Buchanan v. Kentucky*, 483 U.S. 402, 407 n.6 (1987). The process of winnowing out such potential jurors is known as death qualification. *United States v. Green*, 407 F.3d 434, 436 (1st Cir. 2005). The non-capital defendants argue that the death-qualification process prejudices their right to a fair trial, because death-qualified juries are more conviction-prone than other juries.

The Supreme Court has expressly held that death qualification does not violate either a capital defendant's or a jointly tried non-capital defendant's rights under the Sixth and Fourteenth Amendments to an impartial jury selected from a representative cross section of the community. *See Buchanan*, 483 U.S. at 414-15. In so holding, the Supreme Court explained the strong interests in a joint trial:

> Underlying the Commonwealth's interest in a joint trial is a related interest in promoting the reliability and consistency of its judicial process, an interest that may benefit the noncapital defendant as well. In joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing. . . . This jury perspective is particularly significant where, as here, all the crimes charged against the joined defendants arise out of one chain of events, where there is a single victim, and where, in fact, the defendants are indicted on several of the same counts.

*Id.* at 418. Where a capital and non-capital defendant are joined and the capital-sentencing scheme requires the use of the same jury for the guilt and penalty phases of the capital defendant's trial, the interest in this scheme, which is significant, coupled with the government's interest in a joint trial, "argues strongly in favor of permitting 'death qualification' of the jury." *Id.* at 419-20. The Supreme Court also rejected the petitioner's argument that a "death-qualified" jury lacks impartiality. *See id.* at 420. The Court so held, even after assuming, for the purpose of argument, that studies validly established that death qualification produces juries somewhat more conviction-prone than non-death-qualified juries. *See id.* at 415 n.16.

Although *Buchanan* held that the Constitution does not require severance of non-capital defendants from capital defendants, the Court still retains discretion to sever upon a finding of prejudice. *See United States v. Sanchez*, 75 F.3d 603, 604 (10th Cir. 1996) (severance a matter of discretion). Many trial courts, following *Buchanan*, have concluded that death qualification, alone,

is not a sufficient reason to justify severance. *See, e.g.*, *United States v. Cuong Gia Le*, 316 F.Supp.2d 330, 339 (E.D. Va. 2004) (rejecting argument that death qualification requires severance); *United States v. Bin Laden*, 109 F.Supp.2d 211, 221-22 (S.D.N.Y. 2000) (denying severance because death-qualified jury does not lack impartiality); *United States v. Aiken*, 76 F.Supp.2d 1346, 1357 (S.D. Fla. 1999) (same). Other courts, however, while acknowledging that a death-qualified jury may not in itself be a sufficient reason to justify severance, have viewed the potential prejudice from death qualification as further support for severance. *See, e.g.*, *Basciano*, 2007 WL 3124622 at *7-8 ("My recent experience in trying a death penalty case . . . has convinced me that the different trial strategies employed by counsel in approaching jury selection in a death penalty trial may in fact be sufficient on their own to justify severance where one defendant faces the death penalty and the others do not. It is not necessary to reach that issue here, however, because when these concerns combine with a high likelihood of spillover prejudice, as in this case, they provide 'further support' for severance."); *United States v. Rollack*, 64 F.Supp.2d 255, 257 (S.D.N.Y. 1999) (holding that, although death-qualified jury may not be sufficient in itself to justify severance, death qualification provided additional support for severance in light of other spillover prejudice).

Although I acknowledge that a joint trial before a death-qualified jury is not unconstitutional *per se*, the potential prejudice from the death qualification process, however slight, when combined with the significant concerns regarding prejudice in this case, from the admission of non-testifying co-defendant confessions as well as from the potential spillover effect of the admission of Rule 404(b) evidence the United States seeks to admit, weighs in favor of severance. It is the combination of these multiple thorny issues that persuade me that this is the kind of extraordinary

case that warrants the exercise of my discretion to grant severance. Accordingly, based on the totality of the circumstances in this case, Mr. Lujan's trial should be severed from the trial of his co-defendants.

**B. Severance between Non-Capital Defendants**

**1. Judicial Economy**

From the summary of the government's case, it appears that the evidence against each non-capital co-defendant is largely the same. The incident arises from the same course of conduct and involves the same actors. Separate non-capital trials thus will be highly duplicative. In light of the fact that Mr. Lujan's trial will be severed from that of his co-defendants, many of the arguments that Mr. Lamunyon and Mr. Medina set forth to support severance are no longer applicable. A third trial in this matter will further strain judicial resources and result in additional inconvenience and trauma of witnesses having to testify a third time. I therefore find that judicial economy concerns weigh in favor of a joint trial of Mr. Lamunyon and Mr. Medina.

**2. *Bruton***

The only argument that Mr. Lamunyon and Mr. Medina raise to support severance amongst themselves is that they would be unduly prejudiced by the admission of confessions of each other that may violate their confrontation rights. Having considered the statements at issue, I conclude that the additional severance of Mr. Medina's trial from Mr. Lamunyon's trial is not necessary to cure any *Bruton* problems. Because Mr. Lujan will be tried separately, references to him in statements by Mr. Medina and Mr. Lamunyon will no longer need to be redacted, thus eliminating the confusion inherent in redacting the names of more than one co-defendant within one statement. Moreover, Mr. Lamunyon's and Mr. Medina's statements contain far fewer references to each other than to Mr. Lujan. It will therefore be far easier to redact references to Mr. Medina in Mr.

Lamunyon's statements and vice versa without making it obvious that the statements have been redacted.

Moreover, the fact that Mr. Lamunyon's and Mr. Medina's confessions are similar does not compel severance. The Second Circuit has expressly held that admission of interlocking confessions does not violate the Confrontation Clause, so long as each co-defendant's redacted confession, viewed in isolation, does not incriminate the other defendant. *See Williams*, 936 F.2d at 699-701. In *Williams*, the co-defendant's confession was redacted to replace references to the defendant with "another guy." *See id.* at 699. Even though the defendant's own confession was also before the jury and interlocked with the co-defendant's confession in such detail that the jury could "quickly conclude" that defendant was the other "guy," there was no Sixth Amendment violation because the confession, viewed in isolation, did not implicate the defendant. *See id.* at 700-01. As the Second Circuit explained:

> The interlocking of the confessions thus all but insured that a jury *could* identify the person referred to in McKenzie's confession as Williams. . . . Nevertheless, a jury *would* identify Williams as the other "guy" in McKenzie's confession only if it disregarded the limiting instructions given by the district court. As noted, *Richardson* stated that where linkage to other evidence is necessary to connect the defendant to the crime described in a codefendant's confession, the likelihood that a jury will disregard such a limiting instruction is less than in a case such as *Bruton*, in which the codefendant's confession directly and expressly implicated the defendant. Admission of McKenzie's testimony was thus not error.

*Id.*

The Tenth Circuit has cited the *Williams* case approvingly for the proposition that if a confession does not facially incriminate the co-defendant, then it may be admitted with a limiting instruction, even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the co-defendant. *See Verduzco-Martinez,* 186 F.3d at 1215; *United States v. Green*, 115 F.3d 1479, 1484-86 (10th Cir. 1997) (following rationale in *Williams* in adopting view that

redacted confession should be viewed in isolation from other evidence introduced at trial and rejecting contextual approach that looked at whether other evidence linked statement to defendant). Because Mr. Lamunyon's and Mr. Medina's statements can each be redacted relatively easily to avoid mention of each other without confusion, the statements, when viewed in isolation, will not facially incriminate one another. Linking each co-defendant to the other's statement would thus require an inferential leap not obvious within the four corners of the confession itself. Consequently, admission of Mr. Lamunyon's and Mr. Medina's redacted statements, when admitted with a limiting instruction, in a joint trial will not violate their respective confrontation rights.

For the foregoing reasons, I conclude that the *Bruton* issue does not weigh in favor of severance. Because judicial economy weighs in favor of trying Mr. Lamunyon and Mr. Medina together and because they have not demonstrated other grounds supporting severance, I will deny their requests to sever their trials from one another.

**IT IS THEREFORE ORDERED** that Defendant Kacey Lamunyon's Motion for Severance from Co-Defendants (Doc. 169) and Defendant Eugenio Medina's Motion for Severance (Doc. 172) are **GRANTED** in part and **DENIED** in part. The motions are **GRANTED** to the extent that the Court orders the severance of Defendant Larry Lujan's trial from the trial of Defendants Lamunyon and Medina. The motions are **DENIED** as to Defendant Lamunyon's and Defendant Medina's requests to sever their trials from one another.

ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE